**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Acuity Insurance, as subrogee of Gary Borchert and Zeina Abdallah,

Plaintiff,

v.

Vivint Incorporated, Radio Thermostat Company of America, Inc., Nortek Security & Control LLC, d/b/a 2GIG Technologies, and Genz-Ryan Plumbing and Heating Co.,

Defendants.

Civil No. 23-101 (DWF/DJF)

**MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

This matter is before the Court on Defendant Vivint, Inc.'s ("Vivint") Motion to Dismiss Complaint and Compel Arbitration. (Doc. No. 12.) Plaintiff Acuity Insurance opposes the motion. (Doc. No. 21.) Defendant Nortek Security & Control LLC d/b/a 2GIG Technologies ("Nortek") takes no position with regard to the merits of the motion but argues that it cannot be compelled to arbitrate the claims asserted by Acuity against it and to the extent that the Court compels arbitration of Acuity's claims against Vivint, Nortek seeks that the case be stayed. (Doc. No. 23.) For the reasons set forth below, the Court grants Vivint's motion to compel arbitration only as to Acuity's claims against Vivint, denies the motion to dismiss, and stays the case pending the outcome of arbitration.

## BACKGROUND

On or around May 20, 2019, Plaintiff Gary Borchert entered into a System Purchase and Service Agreement with Vivint (the "Agreement"). (Doc. No. 15 ("Yetka Decl.") ¶¶ 2, 5, Exs. A, D (the "Agreement").) Pursuant to the Agreement, Borchert purchased a Vivint Smart Hub thermostat (the "Thermostat") and doorbell camera and entered into a service agreement to be billed on a monthly basis for an initial term of sixty months. (Agreement at 1 & Doc. No. 15-1, Ex. B.) The following text appears directly above the signature line on the first page of the Agreement (in bold print and all capital letters): "**DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT . . . YOU ARE ENTITLED TO A COPY OF THIS AGREEMENT AT THE TIME YOU SIGN IT . . . THE TERMS OF THIS AGREEMENT ARE CONTAINED ON MORE THAN ONE PAGE. READ THEM BEFORE YOU SIGN BELOW.**" (*Id.* at 1.) On the second page of the Agreement is an arbitration clause, which reads:

> 19. ARBITRATION CLAUSE AND CLASS ACTION WAIVER—PLEASE REVIEW CAREFULLY AS THIS IMPACTS YOUR LEGAL RIGHTS. EACH PARTY AGREES TO BINDING ARBITRATION AS THE SOLE AND EXCLUSIVE REMEDY FOR ANY CONTROVERSY, DISPUTE, OR CLAIM OF ANY KIND OR NATURE BETWEEN THE PARTIES AND THEIR RESPECTIVE AFFILIATES, DIRECTLY OR INDIRECTLY ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT REGARDLESS OF WHAT LEGAL THEORY (INCLUDING WITHOUT LIMITATION, NEGLIGENCE, FRAUD, BREACH OF CONTRACT, BREACH OF WARRANTY OR PRODUCT LIABILITY, OR ANY OTHER THEORY OF LIABILITY) IS USED TO ALLEGE OR DETERMINE LIABILITY FOR THE INJURY OR LOSS. THE PARTIES UNDERSTAND AND AGREE THAT THEY ARE WAIVING THE RIGHT TO A JURY TRIAL. To the extent permitted by law, both parties agree that no lawsuit or any other legal proceeding connected with this Agreement shall be brought or filed more than one (1) year after the incident giving rise to the claim

> occurred. THE PARTIES AGREE THAT THEY MAY BRING CLAIMS AGAINST THE OTHER ONLY IN THEIR INDIVIDUAL CAPACITY AND NOT AS A CLASS OR REPRESENTATIVE ACTION PLAINTIFF OR CLASS ACTION MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING. The Federal Arbitration Act shall apply to this Agreement. The arbitration shall be administered by JAMS in accordance with the JAMS Consumer Arbitration Minimum Standards, which may be found on the Internet at https://www.jamsadr.com/consumer-minimum-standards/.[1]

The Agreement is the same agreement presented to all customers purchasing Vivint's services and products in Minnesota during the relevant time period. (Yetka Decl. ¶ 4, Ex. C ("Jensen Decl.") ¶ 10.) The Agreement is presented to the customer on an iPad by the installation technician and then, after reviewing the Agreement, the customer signs electronically. (*Id.* ¶ 5.) A copy of the Agreement is then sent to the customer via email. (*Id.* ¶ 6.) In addition, Vivint submits that it is customary for salespersons to fill out and maintain the Agreement in the ordinary course of business. (*Id.* ¶ 9.)

On March 1, 2022, Acuity, as subrogee of its insureds Borchert and Zeina Abdallah, served a Summons and Complaint action against Vivint. (Doc. No. 11 ¶ 1.) Acuity alleges that the Thermostat was defective and failed, causing extensive damage to its insureds' home, and that it paid for the damage pursuant to its policy of insurance. (*See generally* Doc. No. 11-1 ("Compl.").) Vivint retained counsel on June 2, 2022, and the parties agreed that Vivint could have until June 30, 2022, to answer or otherwise respond to the Complaint. (Yetka Decl. ¶ 3, Ex. B ¶ 3.) On June 29, 2022, Vivint served

[1] The Court has reproduced the text of the parties' agreement in a standard font. The actual text is significantly smaller and more closely spaced.

a Notice of Motion and Motion to Dismiss the Complaint and Compel Arbitration. (*Id.* ¶ 5.) This action was formally filed in state court on November 4, 2022. (*Id.* ¶ 6; *see also* Doc. No. 11 ¶ 3.) On November 15, 2022, Vivint filed and served its Motion to Dismiss the Complaint and Compel Arbitration. (Yetka Decl. ¶ 3, Ex. B ¶ 7.) On January 5, 2023, the state court entered an order on a stipulation of dismissal as to Genz-Ryan Plumbing and Heating Co. ("Genz-Ryan"), the only defendant who was also a Minnesota resident, and judgment was entered on January 6, 2023. (Yetka Decl. ¶ 6 & Ex. E.) On January 11, 2023, the parties argued Vivint's motion to dismiss and compel arbitration in state court. (*Id.* ¶ 7.) At that time, Vivint informed the court that in light of Genz-Ryan's dismissal (and the creation of complete diversity of the parties), it would act to remove the action to federal court. (*Id.* ¶ 8.) On January 31, 2023, Vivint filed its Second Amended Notice of Removal. (*Id.* ¶ 9; Doc. No. 11.)

In its Complaint, Acuity asserts five claims: (1) negligence; (2) breach of implied warranty; (3) strict product liability (design defect); (4) strict product liability (marketing defect); and (5) breach of statutory warranty. Vivint argues that all of these claims are expressly reserved for arbitration pursuant the Agreement's arbitration provision.

**DISCUSSION**

In determining whether to compel arbitration, the Court determines: (1) whether a valid agreement to arbitrate exists between the parties; and (2) whether the specific dispute is within the scope of that agreement. *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004). "There is a strong presumption in favor of arbitration and any doubts concerning arbitration rights should be resolved in favor of arbitration."

*Andersen v. Equity Trust Co.*, Civ. No. 18-471, 2018 WL 4623071, at *3 (D. Minn. Sept. 26, 2018) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). Under Minnesota law, an enforceable contract requires: (1) the communication of a specific and definite offer; (2) acceptance of that offer; and (3) consideration. *Pine River State Bank v. Mettille*, 333 N.W.2d 622, 626-27 (Minn. 1983). Minnesota courts evaluate the objective conduct of the parties when determining whether a valid and enforceable contract exists. *Zean v. Comcast Broadband Sec., LLC*, 322 F. Supp. 3d 913, 917 (D. Minn. 2018). "The primary goal of contract interpretation is to determine and enforce the intent of the parties." *ATS Int'l. Inc. v. LAP Distrib. PTE Ltd.*, Civ. No. 11-2207, 2011 WL 6960971, at *5 (D. Minn. Dec. 2, 2011), *report and recommendation adopted*, Civ. No. 11-2207, 2012 WL 32932 (D. Minn. Jan. 6, 2012) (internal quotations omitted).

Accuity opposes the motion to compel arbitration. First, Accuity argues that no valid agreement to arbitrate exists because the Agreement is unreadable as written. Accuity points out that the Agreement is a one-page form contract, wherein the front side (or the first page) of the contract contains information, such as customer name and contact information, price and payment terms, late fee provisions, etc., in large font with minimal margins, and the back side of the contract (or the second page) contains, among other things, the arbitration clause in extremely small font with large margins. Accuity argues that the arbitration provision is so small, and so buried in unrelated text, that it is unreadable and, therefore, invalid. Second, Accuity argues that Vivint has not demonstrated the formation of a contract between parties. In particular, Accuity asserts

that Vivint has failed to demonstrate that it actually communicated its offer to Borchert or that Borchert accepted the terms of any such offer. Accuity questions the facts asserted in the declarations of Carrie Jensen, a legal assistant for Vivint. Finally, Accuity argues that compelling arbitration here would create the risk of multiple and conflicting judgments and, if the motion to compel is granted, Accuity asks that it be granted as to all parties.

After a careful review of the record and consideration of the parties' arguments, the Court concludes that the Agreement's arbitration clause is valid and enforceable and covers the dispute at issue. Borchert signed a contract with Vivint that contains an arbitration clause. That clause is displayed on the back (or second) page of the Agreement in small font similar to the font used in other clauses on that page but contains the following underlined heading in all capital letters: "ARBITRATION CLAUSE AND CLASS ACTION WAIVER—PLEASE REVIEW CAREFULLY AS THIS IMPACTS YOUR LEGAL RIGHTS." The language of the clause demonstrates the parties' intent to arbitrate a broad range of causes of action, including those asserted by Accuity in this case. (*See* Agreement at 2: "EACH PARTY AGREES TO BINDING ARBITRATION AS THE SOLE AND EXCLUSIVE REMEDY FOR ANY CONTROVERSY, DISPUTE, OR CLAIM OF ANY KIND OR NATURE BETWEEN THE PARTIES… ARISING OUT OF, RELATING TO, OR IN CONNECTION WITH THIS AGREEMENT."). The language is clear, unambiguous, and mandatory. *See Waymouth Farms, Inc. v. Olam Americas, Inc.*, Civ. No. A08-1915, 2009 WL 1853186, at *2 (Minn. App. June 30, 2009) (affirming denial of a motion to compel arbitration where the clause

provided that controversies arising out of the contract *may* be settled by arbitration; noting that *may* does not mean *shall*). The clause also provides an opt-out provision, which Borchert did not exercise. This fact further demonstrates Borchert's acceptance of the clause. *See, e.g.*, *McMurray v. AT&T Mobility Servs., LLC*, Civ. No. 21-414, 2021 WL 3293540, at *4 (D. Minn. 2021) (noting that a person's assent is determined by their objective conduct and failure to opt out demonstrates acceptance of arbitration agreement). In short, Borchert agreed to purchase the Thermostat and related services from Vivint and the relationship between him and Vivint concerning the Thermostat and services is governed by the Agreement's terms and conditions, including the arbitration clause.[2]

The Court acknowledges that the font in the arbitration clause is small and tightly spaced. However, it is not unreadable. The arbitration clause is in the same font and the same size as the other terms and conditions on page two of the Agreement. *See, e.g.*, *Hitachi Cap. Am. Corp. v. McCollum*, Civ. No. 19-2747, 2020 WL 3977229, at *8 (D. Minn. July 14, 2020) (explaining that the font size of a forum selection clause was small but clearly legible and in the same style and size as other terms). Moreover, the Agreement is only 2 pages long and contains clear cautionary language. On the first page, directly above the parties' signature, the Agreement warns: **"DO NOT SIGN THIS AGREEMENT BEFORE YOU READ IT . . . THE TERMS OF THIS AGREEMENT ARE CONTAINED ON MORE THAN ONE PAGE. READ THEM**

---

2 As the subrogee of Borchert, the Agreement's terms apply to Acuity.

**BEFORE YOU SIGN BE LOW."** (Agreement at 1.) Further, on the second page, the Agreement again cautions: "PLEASE REVIEW CAREFULLY AS THIS IMPACTS YOUR LEGAL RIGHTS." (*Id.*at 2.) This clear cautionary language undermines any argument that Borchert did not have knowledge of or agree to be bound by the arbitration clause. *See Lauren Mills v. M.M.C. Inc.*, 159 N.W.2d 781, 784-85 (Minn. 1968) (explaining that it is incumbent on the buyer to read the terms on the reverse side of an order form when there is a statement on the front side indicating that the order is subject to the terms and conditions on the face and reverse side, including arbitration).

The Agreement was initially presented to Borchert on an iPad. Acuity suggests that there is a question as to whether Borchert could have been expected to read the arbitration clause when reviewing the document on the iPad screen. (Doc. No. 21 at 8.) Acuity, however, does not offer any facts or statement that Borchert could not or did not read the terms of the Agreement or that he was unable to read the Agreement because it was on an iPad. In addition, as the Agreement states in bolded capital letters that Borchert was entitled to a copy of the Agreement and there is no evidence that Borchert sought such a copy.[3]

Accuity relies on *McCarthy Well Co., Inc. v. St. Peter Creamery, Inc.*, 410 N.W.2d 312 (Minn. 1987), wherein the Minnesota Supreme Court held that an arbitration clause was unenforceable because its terms were unreadable. *Id*. at 315. In *McCarthy*

---

[3] Borchert also signed an "Esign Consent" that states in part: "Vivint shall send you a complimentary copy of your agreement via email immediately after execution and a copy of your agreement will also be made available to you at no charge through the Vivint Customer portal . . . ." (Jensen Decl. ¶ 8.)

*Well*, the terms were "printed on dark paper in tiny print (what appears to be about 3-point type), with no highlighting of various sections and subsections as to their contents." *Id*. at 316 (footnote omitted). In addition, the terms covered the entire page with no margins, which would leave no room for amendments. *Id*. Here, in contrast, the arbitration clause is set forth in all capital letters with an underlined heading that states "ARBITRATION CLAUSE AND CLASS ACTION WAIVER—PLEASE REVIEW CAREFULLY AS THIS IMPACTS YOUR LEGAL RIGHTS." (Agreement at 2.) The font used, while small, is the same for all other terms and conditions on the page and the text is set against a light background. In addition, page two of the Agreement uses wide margins, which would leave room for amendments. The Court finds that the differences between the Agreement at issue here and the one at issue in *McCarthy Well* are significant enough to make that case distinguishable.

## CONCLUSION

Because the Court finds a valid arbitration clause and that the clause encompasses Acuity's claims, the Court grants Vivint's motion to compel arbitration only as to Acuity's claims against Vivint. The Court declines to dismiss Acuity's claims against Vivint or to compel arbitration of Acuity's claims against Nortek but stays these proceedings during the pendency of the arbitration.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Vivint's Motion to Dismiss Complaint and Compel

Arbitration (Doc. No. [12]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The motion to dismiss is **DENIED**.

2. The motion to compel arbitration is **GRANTED**.

3. This matter is **STAYED** pending the outcome of arbitration.

Dated: June 26, 2023

s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge